# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00097-PAB-NYW
(Consolidated with Civil Action No. 22-cv-00347-NRN)

---

Civil Action No. 22-cv-00097-PAB-NYW

YOLANDA BEASLEY,
KIMBERLY SHEARS-BARNES,
SHENEEQUA CARRINGTON, and
JOLYNN FROST, on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

TTEC SERVICES CORPORATION,

     Defendant.

---

Civil Action No. 22-cv-00347-PAB-NYW

DAVID ANDERSON, individually and on behalf of all others similarly situated,

     Plaintiff,

v.

TTEC SERVICES CORPORATION,

     Defendant.

---

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT

---

Plaintiffs Yolanda Beasley, Kimberly Shears-Barnes, Sheneequa Carrington, Jolynn Frost, David Anderson, David Barocas, and Brent Lett[1] ("Plaintiffs") submit this Motion and

---

[1] Mr. Lett is the named plaintiff in a companion action pending in the United States District Court for the Northern District of California captioned, *Lett v. TTEC Services Corp., et al.*, Case No. 3:22-cv-00018-SK, and Mr. Barocas is a named plaintiff in a companion action pending in the United States District Court for the District of Arizona captioned, *Barocas v. TTEC Services Corp.*,

Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant TTEC Services Corporation ("TTEC") has represented that it does not oppose this motion.

## I.     INTRODUCTION

This litigation arises from a data security incident experienced by TTEC between approximately March 2021 and September of 2021 (the "Data Security Incident"). The Data Security Incident involved the unauthorized access of certain files containing the personal identifying information (PII) and protected health information (PHI) of 197,835 individuals.

Plaintiffs, individually and on behalf of putative classes, filed actions against TTEC and its customer Health Net, LLC asserting various claims concerning the Data Security Incident in: (1) the United States District Court for the District of Colorado (the "Court") captioned, *Beasley, et al. v. TTEC Services Corp.*, Case No. 22-cv-00097-PAB-NYW and *Anderson v. TTEC Services Corp.*, Case No. 22-cv-00347-PAB-NYW; (2) the United States District Court for the Northern District of California captioned, *Lett v. TTEC Services Corp. and Health Net, LLC*, Case No. 3:22-cv-00018-SK; and (3) the United States District Court for the District of Arizona captioned, *Barocas v. TTEC Services Corp.*, Case No. 2:22-cv-00217-JFM (collectively, the "Litigation").

After extensive arms' length negotiations and with the assistance of a well-regarded independent third-party mediator, the parties have reached a settlement that is fair, adequate, and reasonable. The agreement creates a $2,500,000 non-reversionary Settlement Fund where Class Members can easily submit a claim for a basic cash award of $100, a reimbursement of out-of-

---

Case No. 2:22-cv-00217-JFM. As this settlement, if approved, will also settle and resolve the claims asserted in Messrs. Lett's and Barocas' cases, and because they are members of this Settlement Class, they are named as Representative Plaintiffs in the Settlement.

pocket expense award of up to $5000, and three-years of state of the art identity theft monitoring and protection services called "Financial Shield."[2] In addition, a subclass of California residents can claim an additional $100 cash award. Plaintiffs strongly believe the settlement is favorable to the Settlement Class.

Pursuant to Rule 23(e), Plaintiffs move the Court for an order certifying the class for settlement purposes, preliminarily approving the proposed settlement agreement, and approving the content and manner of the proposed notice process. Accordingly, and relying on the following memorandum of points and authorities, the Declarations of Plaintiffs' Counsel Gary M. Klinger, Jean S. Martin, and Scott Edward Cole, and attached exhibits filed herewith, Plaintiffs respectfully request the Court preliminarily approve the Parties' Settlement Agreement and issue the proposed order attached to Settlement Agreement (Exhibit 2 to this motion) as Exhibit D.

## II.    CASE SUMMARY

### A.    The Data Security Incident

Defendant TTEC is a global provider of customer experience technology and services. Consolidated Amended Complaint ("CAC") ¶ 1. TTEC operates a network system that stores confidential, personal information about its employees and clients. *Id*. ¶ 3.

Plaintiffs and the Class Members allege that they relied on TTEC to keep their PII confidential and securely maintained, to use this information for business purposes only and to make only authorized disclosures of this information. *Id.* ¶ 43. Plaintiffs allege the Data Security Incident put them at risk of imminent, immediate and continuing risk of harm from fraud and identity theft. *Id*. ¶¶ 112, 122, 134, 146.   Defendant denies any wrongdoing or liability.

---

[2] The Settlement Agreement ("SA") in its entirety is attached as Exhibit 2. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

B.      **Procedural Posture**

Following an investigation by Plaintiffs' Counsel, Plaintiffs, individually and on behalf of putative classes, filed actions against Defendants asserting various claims concerning the Data Security Incident in: (1) the United States District Court for the District of Colorado (the "Court") captioned, *Beasley, et al. v. TTEC Services Corp.*, Case No. 22-cv-00097-PAB-NYW and *Anderson v. TTEC Services Corp.*, Case No. 22-cv-00347-PAB-NYW; (2) the United States District Court for the Northern District of California captioned, *Lett v. TTEC Services Corp., et al.*, Case No. 3:22-cv-00018-SK; and (3) the United States District Court for the District of Arizona captioned, *Barocas v. TTEC Services Corp.*, Case No. 2:22-cv-00217-JFM (collectively, the "Litigation"). The various complaints assert causes of action for: (1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) breach of express contract; (5) breach of contract – third party beneficiary; (6) invasion of privacy; (7) breach of confidence; (8) unjust enrichment; (9) violation of Colorado's Consumer Protection Act; (10) violation of the Arizona Consumer Fraud Act; (11) violation of Virginia's Personal Information Breach Notification Act; (12) unfair business practices; (13) violation of the California Information Practices Act; and (14) violation of California's Confidentiality of Medical Information Act ("CMIA"). ECF No. 20. Plaintiffs sought injunctive and equitable relief, an award of compensatory, statutory, nominal and punitive damages, and reasonable fees and costs allowable by law. *Id.*

Soon after, the Parties began discussing the prospect for early resolution, agreed to a private mediation, and ultimately asked the Court to enter a stipulation extending the case deadlines —a request that the Court allowed. Declaration of Gary M. Klinger in Support of Pls.' Unopp. Mot. for Prelim. Approval, ("Klinger Dec.") filed herewith as Exhibit 1, ¶ 38; ECF Nos. 36-37. Prior to

mediation, the Parties submitted lengthy briefs and exchanged information necessary to evaluate the strengths and weaknesses of Plaintiffs' claims and TTEC's defenses. *Id*.

Then, on July 27, 2022, the Parties engaged in an all-day, arms-length mediation before Bennett G. Picker of Stradley Ronon Stevens & Young, LLP. *Id*. ¶ 39. Mr. Picker is a highly regarded mediator with extensive experience in data breach cases. After a full day of negotiations, the mediation did not result in a settlement. However, the Parties continued to engage in negotiations, which ultimately resulted in a settlement in principle. The Parties notified the Court and the other courts in which the Litigation is pending of a settlement in principle on August 22 and 23. Over the next several weeks, the Parties diligently drafted, negotiated, and finalized the settlement agreement, notice forms, and agreed upon a claims administrator.

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Benefits

The settlement negotiated on behalf of the Class provides for a $2,500,000 non-reversionary Settlement Fund and a claims process through which Class Members can easily submit for substantial settlement benefits. The settlement provides for relief for the approximately 197,835 members of the Settlement Class defined as follows:

> All individuals within the United States (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC data security incident that occurred in approximately March to September of 2021

Excluded from the Settlement Class is any judge presiding over the Litigation and any members of their first-degree relatives, judicial staff, and persons who timely and validly request exclusion from the Settlement Class. SA ¶ 1.37. The settlement also provides for a California Subclass defined as:

> All natural persons residing in the State of California at the time of the Data Security Incident (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC Data Security Incident that occurred in approximately March to September of 2021.

SA ¶ 1.6.

The benefits that Settlement Class and California Subclass Members can claim from the non-reversionary common fund include the following:

a. **Cash Benefits**.

Each Settlement Class Member who files a valid claim will be eligible for one cash payment. If more than one valid claim is submitted, the largest valid claim filed will be processed and the remaining claims will be denied as duplicative. SA ¶ 2.3

Settlement Class Members may make a Settlement Claim for: (i) a Basic Award of $100.00, or (ii) a Reimbursement Award of up to $5000 for documented out-of-pocket expenses incurred in connection with the Data Security Incident. SA ¶ 2.4. In addition, California Settlement Subclass members are also eligible to receive a California Subclass Award payment of $100.00 in recognition of their California Confidentiality of Medical Information Act ("CMIA") claim, regardless of whether they also receive a Basic Award, identity theft protection services, and/or a Reimbursement Award. SA ¶ 2.4.4. These claims are subject to upward or downward proration depending upon the claims filed and approved and the amounts available from the non-reversionary common fund. SA ¶ 2.7.

b. **Identity-Theft Protection**

Additionally, every Settlement Class Member who submits a valid claim is eligible to receive 36 months of free identity-theft monitoring and protection services, called "Financial Shield" by Aura, a.k.a. Pango. SA ¶ 2.4.1. A detailed description of the features

and retail value of this service ($135 per enrollee per year) are set out in the Declaration of
Gerald W. Thompson, attached hereto as Exhibit 5. Settlement Class Members can elect to
enroll in these services on the Claim Form.  Members of the Settlement Class who opted
to receive the one year of credit monitoring initially offered by TTEC remain eligible to
enroll in the additional "Financial Shield" service.  *Id*.

     c.  **Security Enhancements**.

As part of the settlement and pre-mediation discovery, TTEC disclosed that it has
made significant investments in continuing to improve its data security. The settlement
contemplates that TTEC will prepare and provide to Plaintiffs' Counsel a confidential
declaration outlining these security enhancements, thus assuring that Settlement Class
Members' confidential data will be protected in the future.

    **B.**    **The Notice and Claims Process**

The Parties have agreed to use Epiq Class Action and Claims Solutions, Inc. ("Epiq") as
the Notice Provider and Claims Administrator in this case. *Id*. ¶ 37. The cost of notice and claims
administration is estimated to be approximately $170,369.. *Id*. ¶ 38.

    *1.*    *Notice*

The current and agreed upon Notice Plan calls for direct and individual Notice, in the form
of summary postcards, to be provided to Settlement Class Members via United States Postal
Service first class mail. *Id*.  ¶ 40. The Claims Administrator will also establish a dedicated
settlement website and will maintain and update the website throughout the claim period, with the
forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the
Settlement Agreement, contact information for Class Counsel, TTEC's Counsel and the
Administrator, will also make a toll-free telephone line for Settlement Class Members to call with

Settlement-related inquiries, and establish and maintain a post office box for mailed written notifications of exclusion or objections from the Settlement Class. *Id.*

The details of the Notice Program are set out more fully in the Settlement Agreement, ¶¶ 4.1-4.6, and in the supporting declaration of the Claims Administrator, attached as Exhibit 6.

### 2.    Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, make a claim, or decide whether they would like to opt-out or object. *Id.* ¶ 41. Class Members will have 90 days from the Notice Deadline to submit their Claim Form to the Settlement Administrator, either electronically or by mail. *Id.* The Claim Form, attached to the Settlement Agreement as Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it. *See* SA. Ex. A.

To submit a claim for a Basic Award, Settlement Class Members need only confirm and attest to the best of his or her knowledge or belief that they are Settlement Class Members. SA ¶ 2.4.2. California Subclass Members must similarly merely submit an attestation of California residence to receive the California Subclass Award. SA ¶ 2.4.4. For a Reimbursement Award, Settlement Class Members must submit documentation showing that they incurred unauthorized or fraudulent charges or Out of Pocket Expenses fairly traceable to the Data Security Incident, that those losses were not otherwise reimbursed, and attest that the claim is true and correct to the best of his or her knowledge or belief. SA ¶ 2.4.3 and ¶ 2.6. Identity-Theft Protection may be claimed by submitting a valid claim form. SA ¶ 2.4. 1.The Claims Administrator is given the authority to assess the validity of claims. SA  ¶ 7.2.

      *3.*     *Requests for Exclusion and Objections*

Any Settlement Class Member who wishes to exclude themselves from or object to the Settlement shall have until 75 days after the date of the entry of the Preliminary Approval Order to do so. SA 1.26.. Each Settlement Class Member wishing to exclude themselves from the Settlement Class must individually sign and timely mail a written Request for Exclusion to the address designated by the Claims Administrator. SA ¶ 5.1. Any Settlement Class Member who files an opt out shall be excluded from the Settlement Class, and not obtain any benefit hereunder and not offer any release to the Released Parties. Each Settlement Class Member must opt out individually. *Id.*

Settlement Class Members shall have until 75 days after the date of entry of the Preliminary Approval Order or such other date set by the Court in the Preliminary Approval Order to object to the Agreement. SA ¶ 1.24. Settlement Class Members can make objections by mailing the objections to the Settlement Administrator or filing the objection with the court. All such notices of an intent to object to the Class Settlement Agreement must be written and must include all of the following: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a statement as to whether the objection applies only to the Settlement Class Member, to a specific subset of the Settlement Class, or to the entire class; (iv) a clear and detailed written statement of the specific legal and factual bases for each and every objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any counsel representing the objector; (vi) a statement whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel, and, if through counsel, identifying that counsel; (vii) a list of all persons who will be called to testify

at the Final Approval Hearing in support of the objections and any documents to be presented or considered; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (if any). SA ¶ 6.2.

    **C.**    **Plaintiffs' Service Awards, Attorneys' Fees and Costs**

The Settlement Agreement calls for a reasonable service award to each Representative Plaintiff in the amount of $2,500, subject to Court approval, to be paid solely from the Settlement Fund and subject to Court approval. SA ¶ 9.2.

Settlement Class Counsel may file a motion seeking reasonable attorneys' fees in an amount not to exceed 30 percent (or $750,000.00) of the Settlement Fund. SA ¶ 9.1. In addition, Class Counsel may seek their reasonable costs and expenses from the Settlement Fund (not to exceed $20,000). The entirety of the Attorneys' Fees and Expenses Award shall be payable solely from the Settlement Fund. Class Counsel will submit a separate motion seeking attorneys' fees, costs, and Plaintiffs' Service Awards prior to prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id.* ¶ 50.

**IV.**    **LEGAL AUTHORITY**

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. *See also Rutter & Wilbanks Corp.* v. Shell Oil Co., 314 F.3d 1180, 1187 (10th Cir. 2002) (approval of a proposed settlement is within the sound discretion of the Court)). The settlement of complex class action litigation is favored by public policy and strongly encouraged by the courts.

Approval of a class action settlement takes place in two stages. In the first stage, the court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and directs notice to be given to the class. *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 659

(D. Colo. 2018). "The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a [final] fairness hearing." *Rhodes*, 308 F.R.D. at 666 (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (Kane, J.)). In the second stage, the court holds a fairness hearing at which it will address the fairness, reasonableness, or adequacy of the settlement terms and grant final approval of the settlement. Fed. R. Civ. P. 23(e)(2); *Rutter,* 314 F.3d at 1188.

"The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc*., 41 F.Supp.3d 1003, 1007 (D. Colo. May 19, 2014). "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *In re Pool Prods. Distrib. Market Antitrust Litig.,* 310 F.R.D. at 314-315.

"The purpose at the preliminary approval stage is not to make a final determination of the proposed settlement's fairness." *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 WL 6689399, at *3 (D. Colo. Nov. 3, 2015). Thus, "the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval stage." *Id*.; *see also Lucas*, 234 F.R.D. at 693. Representative Plaintiffs here seek preliminary approval of the proposed settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). "Colorado public and judicial policies favor voluntary agreements to settle legal disputes." *See Colorado Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo.1992)(*en banc*); *Davis v. Flatiron Materials Co*., 182 Colo. 65, 511 P.2d 28, 32 (Colo.1973)(en banc).

There is a strong presumption in favor of finding Settlement Agreements fair, adequate and reasonable – especially when the settlement of a class action results from arm's length negotiations between experienced counsel after significant discovery has occurred. *Lucas*, 234 F.R.D. at  693. Compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties, "and settlements are generally favored." *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273 (D. Colo. 1997); *Williams v. First Nat. Bank*, 216 U.S. 582 595, 30 S.Ct. 441, 54 L.Ed. 625 (1910). In granting preliminary approval, the Court determines it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2) and certify the class for purposes of settlement.

"The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citation omitted). Because the proposed Settlement Agreement falls within the range of possible approval, this Court should grant Plaintiffs' motion and allow notice to be provided to the class.

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Plaintiffs here seeks certification of a Nationwide Class consisting of "all individuals within the United States (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC data security incident that occurred in approximately March to September of 2021." Plaintiffs also seek certification of a California Subclass consisting of "all natural persons residing in the State

of California at the time of the Data Security Incident (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC Data Security Incident that occurred in approximately March to September of 2021. The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria". MCL 4th, § 21.632.

Under Rule 23, a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347 (2011), *citing* Rule 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to

certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Despite the necessarily rigorous analysis of certain prongs at the preliminary certification stage, class actions are regularly certified for settlement. In fact, similar data breach cases have been certified – on a *national* basis—including the record-breaking settlement in *In re Equifax*. *See In re Equifax, Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga. 2019). *See also In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021)*; In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp.2d 1040 (S.D. Tex. 2012). This case is no different.

### 1.     The Settlement Class is so numerous that joinder is impracticable.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432 (10th Cir. 1978)*. Here, both the Class clearly surpasses the threshold required to establish numerosity. As the proposed Settlement Class includes approximately 197,835 individuals who had PII or PHI compromised by the Data Security Incident. Accordingly, the Settlement Class is sufficiently numerous to justify certification.

### 2.     Questions of law and fact are common to the Settlement Class.

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A finding of commonality does not require that all class members share identical situations, and factual differences among the claims of the putative class members do not defeat certification. *DG v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). The threshold

for meeting this prong is not high— the requirement is satisfied where the plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 347. Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse*." Soseeah v. Sentry Insurance*, 2016 WL 7435792 (D.N.M. 2016)*,* quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether TTEC failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members is a question common across the entire class. TTEC's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether TTEC failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Security Incident;

- Whether TTEC's data security systems prior to and during the Data Security Incident complied with applicable data security laws and regulations; and

- Whether TTEC's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiffs in the CAC, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

3.    *Plaintiffs' claims and defenses are typical of the Settlement Class.*

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class." *Pliego v. Los Arcos Mexican Restaurants, Inc*., 313 F.R.D. 117, 126 (D. Colo. 2016), quoting *Bass v. PJCOMN Acquisition Corp*., No. 09-CV-01614-REB-MEH, 2011 WL 2149602, at *2 (D. Colo. June 1, 2011). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Id*., quoting *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the attack on TTEC's computers and servers—and the cybersecurity protocols that TTEC had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. Thus, Plaintiffs' claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

4.    *Plaintiffs and their counsel will provide fair and adequate representation for the Settlement Class.*

Representative plaintiffs must be able to provide fair and adequate representation for the class. "The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Pliego*, 313 F.R.D. at 126 (citing *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010). To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2)

counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Security Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Defendant in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for the same $100 payment or the same $5000 expense reimbursement, reduced or increased *pro rata* based on the claims rate and availability of funds. All Settlement Class Members are eligible for the three years of identity theft protection.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the class. *See* Klinger Dec. ¶¶ 3-26; Declaration of Jean S. Martin, ¶¶ 3-12, attached hereto as Exhibit 3; Declaration of Scott Edward Cole, ¶¶ 2-7, attached hereto as Exhibit 4. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

> 5.  *Certification is also appropriate because common issues predominate over individualized ones, and class treatment is superior.*

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold.

First, "[i]n order to 'predominate,' the Court must find that questions of law or fact common to class members predominate over any questions affecting only individual members. *Pliego,* 313 F.R.D. at 126 (citing FED. R. CIV. P. 23(b)(3). In this case, key predominating

questions are whether TTEC had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and the Settlement Class, and whether TTEC breached that duty. The common questions that arise from TTEC's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).[3]

Second, the resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Data Breach. According to the Tenth Circuit, "class treatment is superior [when] it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014). The common questions of fact and law

---

[3] *See also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach).

that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the class should be certified for settlement purposes.

**B.    The Settlement Terms are Fair, Adequate, and Reasonable.**

On preliminary approval, and prior to approving notice be sent to the proposed Class, the Court must determine that it will "likely" be able to grant final approval of the Settlement under Rule 23(e)(2). Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

In the 10th Circuit, approval of a class action settlement is committed to the sound discretion of the Court. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the

mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable. *Id.*

Here, because the Settlement Agreement is fair, reasonable, and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors, this court should grant preliminary approval and allow notice to issue to the class.

1.    *Whether the settlement was fairly and honestly negotiated;*

The negotiations in this matter occurred at arm's length. Klinger Dec. at ¶ 39. Settlements negotiated by experienced counsel that result from arm's length negotiations are presumed to be fair, adequate, and reasonable. *Lucas*, 234 F.R.D. at 693. This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

In this case, the parties engaged in an all-day mediation with well-regarded mediator Bennett Picker. *Id.*,¶ 32. After a full day of arms-length negotiations, the mediation did not result in a settlement. However, the Parties continued to explore a potential resolution. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator like Mr. Picker supports the conclusion that the Settlement was achieved free of collusion. "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 McLaughlin on Class Actions § 6:7 (8th ed. 2011).

2.    *Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;*

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain – especially where serious questions of law and fact exist, which is common in data breach litigation. Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC,

2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky,

expensive, and complex.").

While Plaintiffs strongly believe in the merits of their case, they also understand that TTEC

asserts a number of potentially case-dispositive defenses. In fact, should litigation continue,

Plaintiffs would likely have to immediately survive a motion to dismiss in order to proceed with

litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach

cases like this one generally face substantial hurdles—even just to make it past the pleading stage.

*See Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25,

2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class

certification is another hurdle that would have to be met—and one that been denied in other data

breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D.

21 (D. Me. 2013). Plaintiffs dispute the defenses TTEC asserts—but it is obvious that their success

at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant

benefits without having to face further risk of not receiving any relief at all.

> 3. *Whether the value of an immediate recovery outweighs the mere possibility
> of future relief after protracted and expensive litigation*

The Settlement guarantees Class Members real relief and value for harms as well as

protections from potential future fall-out from the Data Security Incident.

The settlement negotiated on behalf of the Class provides for a $2,500,000 Settlement Fund

where Class Members can easily submit a claim for substantial relief from the Settlement Fund,

as outlined above. Even if every single class member were to file a claim, ***the non-reversionary

Settlement Fund provides for a per class member recovery of approximately $12.63 per class

member***. This compares quite favorably to terms approved by courts in other, similar data breach

cases. *See, e.g., Dickey's Barbeque Restaurants, Inc.,* Case No. 20-cv-3424, Dkt. 62 (N.D. Tex.) (data breach class action involving more than 3 million people that settled for only $2.3 million (or $0.76 per person)); *In re Herff Jones Data Breach Litigation*, No. 21-cv-1329 (S.D. Ind.) (data breach class action involving more than 1 million people that settled for only $4.35 million (or approximately $4.35 per person).

      4.    *Whether the judgment of the parties and their counsel that the settlement is fair and reasonable;*

The judgment of the parties and their counsel also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data breach litigation, and reported settlements in other data breach class actions. The monetary benefits offered to Settlement Class Members are more than fair and reasonable in light of reported average out-of-pocket expenses due to a data breach.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiffs' counsel who have litigated numerous data breach cases, have spoken to victims of other data breaches, and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data breach class actions that have been approved by other courts, including those cited above.

The proposed Settlement is a non-reversionary common fund that does not provide any preferential treatment of the named Plaintiffs or any segments of the Class. See Fed. R. Civ. P.

23(e)(2)(D). With this proposed Settlement, Settlement Class Members are able to recover damages for any injuries caused by the Data Security Incident. In satisfaction of Rule 23(e)(2)(D), the reimbursement for out-of-pocket expenses allow Settlement Class Members to obtain relief based upon the specific types of damages they incurred and treats every claimant in those categories equally relative to each other.

Plaintiffs also intend to apply for service awards for the Settlement Class Representatives. These awards "are fairly typical in class action cases" and are intended to compensate class representatives for participation in the litigation. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). A service award to the Representative Plaintiffs is appropriate here given the efforts and participation of Plaintiffs in the litigation, and does not constitute preferential treatment. The Representative Plaintiffs were not promised a service award, nor did they condition their representation on the expectation of a service award. Klinger Dec. at ¶ 66.

### C.    The Proposed Settlement Administrator will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the Manual for Complex Litigation. *See* SA Exs. B and C (Short and Long

Notice). Here, the Settlement provides for direct and individual notice, to be sent via first class mail to each Settlement Class Member. Klinger Dec. ¶ 58.

Not only has TTEC agreed to provide Settlement Class Members with individualized notice via direct mail through the proposed claims administrator, but all versions of the settlement notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. *Id.* ¶ 40. The Settlement Administrator will also make a post office box and toll-free telephone number available by which Settlement Class members can seek answers to questions about the Settlement. *Id.*

The notices themselves are clear and straightforward. They define the Class; clearly describe the options available to class members and the deadlines for taking action; describe the essential terms of the settlement; disclose the requested service award for the class representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of class counsel. *See* SA at Exs. B and C.

The direct mail Notice proposed here is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them

an opportunity to object or exclude themselves from the settlement. Accordingly, the Notice process should be approved by this Court.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members significant relief in the form of monetary payments and identity theft protections. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of factors required to be considered on final approval favors approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the class for settlement purposes and grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: September 15, 2022                Respectfully submitted,

                                         /s/ Gary M. Klinger
                                         Gary M. Klinger
                                         **MILBERG COLEMAN BRYSON PHILLIPS**
                                         **GROSSMAN, PLLC**
                                         227 W. Monroe Street, Suite 2100
                                         Chicago, IL 60606
                                         Phone: 866.252.0878
                                         gklinger@milberg.com

                                         Jean S. Martin
                                         **MORGAN & MORGAN**
                                         201 N. Franklin Street, 7th Floor
                                         Tampa, Florida 33602
                                         (813) 559-4908
                                         jeanmartin@ForThePeople.com

                                         Scott Edward Cole.
                                         **COLE & VAN NOTE**
                                         555 12th Street, Suite 1725
                                         Oakland, California 94607
                                         Telephone: (510) 891-9800
                                         Facsimile: (510) 891-7030
                                         sec@colevannote.com

                                         *Attorneys for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of September, 2022, I caused the foregoing document to be filed with the Clerk of this Court via the Court's CM/ECF system, which will cause a true and correct copy to be served electronically on all counsel of record.

*/s/ Gary M. Klinger*
Gary M. Klinger