1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00097-PAB-STV
(Consolidated with Civil Action No. 22-cv-00347-PAB-STV)

---

Civil Action No. 22-cv-00097-PAB-STV

YOLANDA BEASLEY,
KIMBERLY SHEARS-BARNES,
SHENEEQUA CARRINGTON, and
JOLYNN FROST, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

TTEC SERVICES CORPORATION,

      Defendant.

---

Civil Action No. 22-cv-00347-PAB-STV

DAVID ANDERSON, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

TTEC SERVICES CORPORATION,

      Defendant.

---

**ORDER**

---

    This matter is before the Court on the Plaintiffs' Unopposed Motion for

Preliminary Approval of Class Action Settlement and Memorandum in Support [Docket

No. 46].  Plaintiffs Yolanda Beasley, Kimberly Shears-Barnes, Sheneequa Carrington,

2

Jolynn Frost, and David Anderson, along with David Barocas and Brent Lett, [1] (collectively the "representative plaintiffs") filed the unopposed motion for preliminary approval of class action settlement. Docket No. 46 at 1-2. Defendant TTEC Services Corporation ("TTEC") does not oppose the motion. *Id*. at 2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## I.   BACKGROUND

TTEC is a global provider of customer experience technology and services. Docket No. 20 at 2, ¶ 2. TTEC stores confidential information about its employees and clients on a network system. *Id*. at 3, ¶ 3. This action arises from a data security breach of TTEC's system that occurred from March 31, 2021 to September 12, 2021. *Id*. at 4, ¶ 7. An unauthorized, unknown party obtained TTEC files that contained the personally identifiable information ("PII") of approximately 197,835 individuals, including names and Social Security numbers. *Id*. at 4-5, ¶¶ 7-9, 16; Docket No. 46 at 2. Plaintiffs allege that TTEC failed to follow basic security procedures and adequately protect the PII of class members. Docket No. 20 at 5-6, ¶¶ 13, 20. Plaintiffs allege that the data security breach constitutes a present and continuing risk of fraud and identity theft. *Id*. at 29, 31, 33-34, ¶¶ 112, 122, 134, 146. Plaintiffs assert common law claims for negligence, breach of contract, invasion of privacy, and breach of confidence, as well as violations of several state privacy statutes. *Id*. at 42-68.

---

[1] Mr. Barocas is a named plaintiff in a companion action pending in the United States District Court for the District of Arizona, *Barocas v. TTEC Services Corp*., No. 22-cv-00217-JFM. Docket No. 46 at 1-2 n.1. Mr. Lett is the named plaintiff in a companion action pending in the United States District Court for the Northern District of California, *Lett v. TTEC Services Corp., et al*., No. 22-cv-00018-SK. *Id*. Mr. Lett and Mr. Barocas are therefore named as representative plaintiffs in the settlement. *Id*.

3

## II.   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of a class action settlement under Federal Rule of Civil Procedure 23 takes place in two stages.  In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement.  In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it will address (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms.  Fed. R. Civ. P. 23(e)(2); *see, e.g., McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

"Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is . . . 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-PAB-KLM, 2013 WL 4547404, at *3 (D. Colo. Aug. 28, 2013) (quoting *Davis v. J.P. Morgan Chase & Co.*, 775 F. Supp. 2d 601, 607 (W.D.N.Y. 2011)).  A proposed settlement of a class action should therefore be preliminarily approved where it "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives." *See In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012) (internal quotation marks omitted).  Although the standards for preliminary approval of a class action settlement are not as stringent as they are in the

4

second stage, *id.*, the standards used in the second stage inform the Court's preliminary inquiry.  Therefore, it is appropriate to review those standards.

District courts have broad discretion when deciding whether to certify a putative class.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso ("Shook I")*, 386 F.3d 963, 967 (10th Cir. 2004).  A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 564 U.S. at 350-51; *see also In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) (holding that "the obligation to make [Rule 23] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement").

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b).  In the typical case where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook I*, 386 F.3d at 968).  Here, the representative plaintiffs move for certification for the purposes of settlement and TTEC does not oppose the motion.  Docket No. 46 at 1-2.  Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed.

5

R. Civ. P. 23(a); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d. Cir. 2011). A class action may be sustained if these requirements are satisfied and the class meets the requirements of one of the categories of Rule 23(b). Fed. R. Civ. P. 23(b).

The representative plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3). Docket No. 46 at 13, 17. Under that provision, plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). To certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). However, all of the other Rule 23 requirements apply and demand heightened attention in the settlement context because the Court generally lacks an opportunity to adjust the class as the case unfolds. *Id.* If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the Court must separately evaluate whether the settlement agreement is

6

"fair, reasonable, and adequate" under Rule 23(e).[2]  Fed. R. Civ. P. 23(e)(2); *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).

If plaintiffs meet the requirements for preliminary approval, the Court will direct notice to all class members who would be bound by the proposal and hold a fairness hearing to determine if

> it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Though the standards for preliminary approval are not as stringent as those for final approval, the final approval standards inform the Court's preliminary inquiry and thus it is appropriate to review them.

A court's review for final approval is to "focus[] on whether '(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable.'"  *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir. 2020) (unpublished) (quoting *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015)).

---

[2] The Supreme Court in *Amchem* cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead "function[s] as an additional requirement."  521 U.S. at 621.

7

III.    **ANALYSIS OF PROPOSED SETTLEMENT AGREEMENT**

    A. <u>**Settlement Agreement**</u>

The motion for preliminary approval seeks certification of a nationwide class

consisting of "[a]ll individuals within the United States (1) whose protected health

information or personal identifying information was stored, possessed or controlled by

TTEC; and (2) who were affected by the TTEC data security incident that occurred in

approximately March to September of 2021."  Docket No. 46 at 5; *see also* Docket No.

46-2 at 14, ¶ 1.38.  The motion also seeks approval of a California subclass consisting

of "[a]ll natural persons residing in the State of California at the time of the Data Security

Incident (1) whose protected health information or personal identifying information was

stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC Data

Security Incident that occurred in approximately March to September of 2021."  Docket

No. 46 at 5-6; *see also* Docket No. 46-2 at 6-7, ¶ 1.6.  The following persons are

excluded from the nationwide class: any judge presiding over the litigation and any

members of their first-degree relatives; judicial staff; and persons who timely and validly

request exclusion from the settlement class.  Docket No. 46 at 5; *see also* Docket No.

46-2 at 14, ¶ 1.38.  The following persons are excluded from the California subclass:

any judge presiding over the litigation and any members of their first-degree relatives;

judicial staff; the officers and directors of TTEC; and persons who timely and validly

request exclusion from the California subclass.  Docket No. 46-2 at 6-7, ¶ 1.6.

The settlement agreement provides for a $2,500,000 non-reversionary settlement

fund.  Docket No. 46 at 5.  Each class member who files a valid claim will be eligible for

one cash payment for (i) a basic award of $100 or (ii) a reimbursement award of up to $5,000 for documented out-of-pocket expenses incurred in connection with the data security breach. *Id*. at 6.  Every class member is also eligible to receive 36 months of free identity-theft monitoring and protection services, called "Financial Shield."  *Id*.  In addition, California settlement subclass members are eligible to receive a California subclass award payment of $100 in recognition of their California Confidentiality of Medical Information Act ("CIMA") claim, regardless of whether they also receive a basic award or reimbursement award.  *Id*.  The monetary awards are subject to upward or downward proration depending on the number of approved claims.  *Id*.  The settlement agreement allows each representative plaintiff to claim a "service award" of $2,500.  *Id*. at 10.  The settlement agreement also permits class counsel to file a motion seeking reasonable attorneys' fees in an amount not to exceed 30 percent ($750,000) of the settlement fund and reasonable costs and expenses not to exceed $20,000.  *Id*.

The parties have agreed to use Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the notice provider and claims administrator in this case.  *Id*. at 7.  The motion proposes direct and individual notice, in the form of summary postcards, to be provided to settlement class members via United States Postal Service first class mail. *Id*.  The claims administrator will also establish a settlement website with pertinent forms and contact information, a toll-free telephone line, and a post office box.  *Id*. at 7-8.  The parties propose that class members who seek to exclude themselves from the settlement agreement or object to the fairness, reasonableness, or adequacy of the agreement may do so until 75 days after the entry of this Order.  *Id*. at 9.

9

**B.  Numerosity**

Rule 23(a)(1) requires that the class membership be sufficiently large to warrant

a class action because the alternative of joinder is impracticable.  Fed. R. Civ. P.

23(a)(1).  Some courts have held that numerosity may be presumed after a certain

number; however, the Tenth Circuit has never adopted a minimum presumption of

numerosity.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (upholding district

court ruling that a group of eighty-four class members was insufficient to warrant class

certification).

Here, the proposed settlement class includes approximately 197,835 people

whose PII was compromised by the data security breach.  Docket No. 46 at 14.  The

parties state that the class "clearly surpasses the threshold" requirement for numerosity.

*Id.*  Given *Trevizo*, the sheer number of class members does not create a presumption

of numerosity; however, given that TTEC does not object to this estimate and that the

Tenth Circuit has found fewer potential claimants can satisfy numerosity, *see, e.g.*, *Rex*

*v. Owens ex rel St. of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have

been deemed viable in instances where as few as 17 to 20 persons are identified as the

class."), the Court agrees that joinder of at least 197,835 people would be impracticable

and that the numerosity requirement is met.

**C.  Commonality**

Rule 23(a) requires a district court to ensure that "there are questions of law or

fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Factual differences in the claims of

the individual class members should not result in the denial of class certification where

10

common questions of law exist.  *Devaughn*, 594 F.3d at 1195.  Commonality requires

that the plaintiff demonstrate that the class members have "suffered the same injury"

such that the claims of the class are based on a common contention and that the

determination of the truth or falsity of this contention "will resolve an issue that is central

to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  In other

words, plaintiffs must have a common question of fact or law that will connect many

individual claims to the relief sought by the class.  *Ellis v. Costco Wholesale Corp.*, 657

F.3d 970, 981 (9th Cir. 2011).  Even a single common question will satisfy commonality.

*Dukes*, 564 U.S. at 359.

     Here, there are many common questions of law and fact.  The parties explain

that common issues include whether TTEC failed to adequately safeguard the records

of class members; whether TTEC's data security systems prior to and during the breach

complied with applicable data security laws and regulations; and whether TTEC's

conduct rose to the level of negligence.  Docket No. 46 at 15.  The relief in this case will

not require an examination of unique circumstances, apart from the standard claims

administrator determination.  The Court finds that the proposed class satisfies the

commonality requirement.

     **D.  <u>Typicality</u>**

     Rule 23(a)(3) requires that the "claims or defenses of the representative parties

are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The

typicality requirement ensures that the absent class members are adequately

represented by the lead plaintiffs such that the interests of the class will be fairly and

adequately protected in their absence.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

11

157 n.13 (1982). Typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). The interests and claims of the lead plaintiffs and the class members need not be identical to satisfy typicality and, provided the claims of the lead plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. *Devaughn*, 594 F.3d at 1198-99. Nevertheless, "it is well-established that a proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become to become a major focus of the litigation.'" *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (citation omitted).

The parties explain that the representative plaintiffs' claims and the proposed class members' claims all stem from the same event, the attack on TTEC's computers and servers, as well as the same cybersecurity protocols that TTEC had in place to protect data. Docket No. 46 at 16. The representative plaintiffs do not appear to be subject to any unique defenses. *See Marcus*, 687 F.3d at 599. Accordingly, the Court agrees that the representative plaintiffs bring claims that are typical of the proposed class.

### E.  Adequacy of the Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Supreme Court has noted, the "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for

12

determining whether maintenance of a class action is economical and whether the

named plaintiff's claim and the class claims are so interrelated that the interests of the

class members will be fairly and adequately protected in their absence." *Amchem*, 521

U.S. at 626 n.20 (internal quotations omitted).  As such, the "inquiry under Rule 23(a)(4)

serves to uncover conflicts of interest between named parties and the class they seek to

represent." *Id.* at 625.  To be an adequate class representative, the "representative

must be part of the class and possess the same interest and suffer the same injury as

the class members." *Id*. at 625-26.  The Court has found that the representative

plaintiffs bring claims typical of the proposed class.  *See* Section III.D, *supra*.

The Tenth Circuit has identified two questions relevant to the adequacy of

representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts

of interest with other class members and (2) will the named plaintiffs and their counsel

prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v.

Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation omitted).  "Adequate

representation depends on, among other factors, an absence of antagonism between

representatives and absentees, and a sharing of interest between representatives and

absentees." *Ellis*, 657 F.3d at 985.

With regard to the first adequacy factor, the Court finds that the interests of the

class are fairly and adequately protected by the representative plaintiffs and their

counsel.  The parties state that "Plaintiffs' interests are aligned with those of the

Settlement Class in that they seek relief for injuries arising out of the same Data

Security Incident."  Docket No. 46 at 17.  Further, there is nothing in the record to show

any conflict of interest between the representative plaintiffs or counsel and the rest of

13

the class.  Moreover, the settlement agreement does not raise any obvious concerns regarding interclass conflicts.  *See Amchem*, 521 U.S. at 611-12 (noting interclass conflict between the exposure-only asbestos plaintiffs and those already afflicted with asbestos related disease).  There is also no evidence that one set of potential class members is at risk of benefitting from the settlement agreement to the detriment of another set of class members.  Class members will be able to challenge this issue at the fairness hearing if they believe otherwise.

With regard to the second adequacy factor, the parties argue that the representative plaintiffs and the proposed class counsel will prosecute the action vigorously on behalf of the class.  Docket No. 46 at 17.  The parties state that the proposed class counsel – Gary M. Klinger, Jean S. Martin, and Scott Edward Cole – have decades of experience as class action litigators and will advocate on behalf of the class.  *Id*.  Moreover, the representative plaintiffs and proposed class counsel negotiated an early-stage settlement that will guarantee immediate relief to class members.  *Id*.  There are no questions regarding the competency of the proposed class counsel or their ability to prosecute this action and, to the extent any such questions do arise, they will be considered at the fairness hearing.  Accordingly, at this preliminary stage, because the representative plaintiffs and proposed class counsel do not have a conflict of interest with the rest of the class and have shown that they can vigorously litigate on behalf of the class, the Court finds that the representative plaintiffs have satisfied Rule 23(a)(4)'s requirements.  *See Rutter*, 314 F.3d at 1188.

**F.  Rule 23(b)(3)**

14

To qualify for certification under Rule 23(b)(3), class questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem*, 521 U.S. at 615.  Rule 23(b)(3) states that courts should consider the following factors when certifying a class: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).

Parallel with Rule 23(a)(2)'s commonality element, Rule 23(b)(3)'s predominance requirement imposes an obligation upon district courts to ensure that issues common to the class predominate over those affecting only individual class members.  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).  However, the predominance criterion is "far more demanding" than Rule 23(a)(2)'s commonality requirement. *Amchem*, 521 U.S. at 624.  Rule 23(b)(3)'s purpose is to "ensure[ ] that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007).  Thus, Rule 23(b)(3)'s predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation based on "questions that preexist any settlement."  *Amchem*, 521 U.S. at 623.

15

The parties argue that common questions of law and fact predominate over any questions affecting only individual members.  Docket No. 46 at 17.  Common questions include whether TTEC had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of the representative plaintiffs and the class members, and whether TTEC breached that duty.  *Id.* at 17-18.  Because the common questions of law and fact depend upon the conduct of TTEC, these questions predominate as they are unaffected by the particularized conduct of individual class members.  Furthermore, other courts have similarly found that common issues in data breach cases predominate over individualized issues.  *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012); *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016); *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *13 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part*, 999 F.3d 1247 (11th Cir. 2021); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022); *In re Cap. One Consumer Data Sec. Breach Litig.*, 2022 WL 18107626, at *5 (E.D. Va. Sept. 13, 2022); *Bowdle v. King's Seafood Co., LLC*, 2022 WL 19235264, at *4 (C.D. Cal. Oct. 19, 2022).  Accordingly, the Court finds that common issues of law and fact predominate in this case.

Second, the Court finds that a class action settlement is a superior method for resolving this dispute fairly and effectively.  Settlement avoids duplicative litigation, saving both class members and TTEC significant time and legal costs to adjudicate common legal and factual issues.  In addition, settlement is appropriate because

16

individual recovery for these claims is likely to be too small to provide an incentive for individual class members to adjudicate individual claims.  Although there is similar litigation pending in the District of Arizona and the Northern District of California, the parties have stated that this settlement will resolve the claims asserted in those cases. Docket No. 46 at 1-2 n.1.  There are also no issues regarding interclass conflicts as all class members are eligible to receive Financial Shield identity theft monitoring services, as well as a basic award of $100 or a reimbursement award of up to $5,000 for documented out-of-pocket expenses incurred in connection with the data breach.  Thus, given that the class members' claims arise out of the same series of events, the Court finds that conducting the class action settlement in this forum would achieve economies of time, effort, and expense, and promote uniformity of decision to similarly situated persons.  Fed. R. Civ. P. 23(b)(3); *Cordes*, 502 F.3d at 104.  Therefore, because the 197,835 class members will receive the same type of relief, and have claims that present common questions of fact and law, the Court finds that class certification is appropriate because the class questions predominate over individual questions and the settlement class is a superior method of resolving this litigation.  *See Amchem*, 521 U.S. at 623.

### G.  Rule 23(e) Factors

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*,

17

629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem*, 521 U.S. at 623 (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188.  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

It is unclear to what extent a court on a motion for preliminary approval of a proposed class settlement must delve into these factors.  However, based on the information available to the Court, the Court notes the following, which weighs in favor of preliminary approval.  The proposed settlement agreement is the product of significant negotiations and discussion between the parties.  The parties participated in

18

an all-day mediation session before mediator Bennett Picker on July 27, 2022.  Docket

No. 46 at 20; Docket No. 46-1 at 15, ¶ 39.  Although the mediation session did not result

in an immediate settlement, the parties continued to engage in negotiations, which

ultimately resulted in the settlement agreement.  Docket No. 46-1 at 15, ¶¶ 39-40.

There is no evidence that the settlement agreement was the result of a collusive

agreement between the parties.  The Court therefore finds that the negotiations were

done fairly and honestly.  Furthermore, the representative plaintiffs concede that "their

success at trial is far from certain" because TTEC asserts several "case-dispositive

defenses" and data breach cases "generally face substantial hurdles."  Docket No. 46 at

21.  TTEC also denies any wrongdoing or liability.  *Id*. at 3.  As a result, the Court finds

that this factor weighs in favor of the proposed settlement.

Next, the Court must determine whether the value of immediate recovery

outweighs the mere possibility of future relief.  This factor weighs in favor of the

proposed settlement.  If every class member files a claim, the $2,500,000 settlement

fund would provide for a recovery of approximately $12.63 per class member, in

addition to free identity theft monitoring services.  *Id*. at 21.  "The relatively early

Settlement in this case benefits the Settlement Class immensely because they can

immediately take advantage of Settlement benefits designed to mitigate and prevent

future harm including identity monitoring" services.  *Home Depot*, 2016 WL 6902351, at

*5.  "Courts presiding over similar cases have recognized that the 'legal issues involved

in data breach litigation are cutting-edge and unsettled, so that many resources would

necessarily be spent litigating substantive law as well as other issues.'"  *Id*. (citation and

alterations omitted).  Given the uncertainty of class members' likelihood of success on

19

the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex data breach litigation. Accordingly, the Court finds this factor weighs in favor of granting preliminary approval.

With regard to the fourth factor, it is evident that the parties believe that the settlement agreement is fair and reasonable.  Plaintiffs' counsel has extensive experience in data breach litigation and states that the settlement is very reasonable considering average out-of-pocket expenses in data breach cases.  Docket No. 46 at 22.  The monetary benefits per class member provided by the settlement agreement exceed the monetary benefits in many other data breach cases.  *See id.* at 21-22. Certifying the class will allow the Court to determine whether there are other members of the class who challenge the fairness of the parties' proposed settlement agreement. Should any class member find the terms of the settlement agreement unfair, he or she may choose not to join the settlement and to litigate independently or to remain in the case and file objections to the settlement agreement detailing why it is unfair under the Rule 23 factors.  *Cf. Grilli v. Metro. Life Ins. Co., Inc.*, 78 F.3d 1533, 1536–38 (11th Cir. 1996) (district court did not abuse discretion in denying motion to intervene, based on the court's conclusion that proposed intervenors could protect their interest either by opting out of the class and litigating separately, or by remaining in the case and, if they thought the proposed settlement was unfair, objecting to it); *cf. In re Crocs*, 2013 WL 4547404, at *12 (explaining that party opposing settlement agreement could opt-out or file objections).  The Court finds that the presumption of fairness is sufficient to preliminarily approve the terms of the proposed settlement agreement.

20

## IV.    NOTICE TO THE SETTLEMENT CLASS

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar."  *DeJulius*, 429 F.3d at 944.

The parties agree to provide direct and individualized notice, in the form of postcards, to class members via United States Postal Service first class mail.  Docket No. 46 at 7.  The proposed notice in this case provides class members with information regarding the class action, the terms of the settlement agreement, attorneys' fees and

21

expenses, the fairness hearing, and how individuals can opt-out of the class or object to

the terms of the settlement agreement.  Docket No. 46-2 at 51-63; Fed. R. Civ. P.

23(c)(2)(B)(i)–(vii).  TTEC will provide the claims administrator with a list of class

members, including names and physical mailing addresses.  Docket No. 46-2 at 25,

¶ 4.2.  Based on the foregoing, the Court is satisfied that the parties' proposed notice is

reasonably calculated to apprise the absent class members of the action.  *See In re

Integra*, 262 F.3d at 1111.  The proposed notice plan set forth in the settlement

agreement and the notice forms and claim form attached as Exhibits A, B, and C are

approved.

## V.   CLASS COUNSEL

When certifying a class, a court "must appoint class counsel."  Fed. R. Civ. P.

23(g).  In appointing class counsel, the Court must consider:

> (A)(i) the work counsel has done in identifying or investigating potential claims in
> the action; (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action; (iii) counsel's knowledge
> of the applicable law; and (iv) the resources that counsel will commit to
> representing the class; [and] (B) may consider any other matter pertinent to
> counsel's ability to fairly and adequately represent the interests of the class[.]

Fed. R. Civ. P. 23(g)(1).  The settlement agreement lists Jean S. Martin, Gary M.

Klinger, and Scott Edward Cole as class counsel.  Docket No. 46-2 at 14, ¶ 1.39.

Plaintiffs' attorneys state that they have "decades of combined experience as vigorous

class action litigators" and experience with data breach litigation.  Docket No. 46 at 17,

22; *see also* Docket No. 46-1 at 3-11, ¶¶ 3-21 (describing Gary M. Klinger's experience

with class actions and data breach cases); Docket No. 46-3 at 4, ¶¶ 8-10 (describing

Jean S. Martin's experience with class actions and data breach cases); Docket No. 46-4

22

at 3-6, ¶¶ 3-7 (describing Scott Edward Cole's experience with class actions and data breach cases).  The Court finds that counsel have sufficient experience in class actions and their knowledge of the applicable law, as exhibited in the case up to this point, weighs in favor of their appointment.  Therefore, the Court finds that it is appropriate to appoint Jean S. Martin, Gary M. Klinger, and Scott Edward Cole as class counsel.

## VI.    ADDITIONAL PROCEDURES

The Court will adopt the notice, fairness hearing, opt-out, and objection schedules proposed by the representative plaintiffs, with the exception that class counsel must file the motion for final approval of the class action settlement at least 21 days before the fairness hearing.  *See* Docket No. 46-2 at 74.[3]  The Court appoints Epiq as the claims administrator.  Accordingly, the following deadlines apply:

| Event | Timing |
|---|---|
| Defendants Provide Class List to Claims Administrator | Within 15 days after entry of this Preliminary Approval Order |
| Notice Deadline for Claims Administrator to Send Summary Notice | Within 15 days after receiving the Settlement Class list from Defendants |
| Motion for Attorney's Fees, Reimbursement of Costs and Expenses, and Service Awards to be Filed by Class Counsel | At least 14 days before the Objection Deadline |
| Postmark Deadline for requests for Exclusion (Opt-Out) or Objections | 75 days after entry of this Preliminary Approval Order |

---

[3] The parties also request that TTEC provide Class Action Fairness Act ("CAFA") notices as required by 28 U.S.C. § 1715(b) within 10 days after the filing of plaintiffs' motion for preliminary approval of class action settlement.  Docket No. 46-2 at 74.  On September 22, 2022, Epiq's attorney filed a declaration stating that the Claims Administrator, at the direction of TTEC's counsel, sent the CAFA notices to the Attorney General of the United States and the Attorneys General of all 50 states, the District of Columbia, and United States Territories.  Docket No. 47 at 2, ¶¶ 5-7.  Accordingly, the parties' request is moot.

23

| Postmark/Filing Deadline for Filing Claims | 90 days after Notice Deadline |
|---|---|
| Motion for Final Approval to be Filed by Class Counsel | At least 21 days before the Fairness Hearing. |
| Fairness Hearing | No earlier than 100 days after entry of this Preliminary Approval Order |

Additionally, the parties shall contact the Court's chambers to set a date for the fairness hearing within seven days of the entry of this order.

## VII.   CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support [Docket No. 46] is **GRANTED**.  It is further

**ORDERED** that the parties shall contact the Court's chambers within seven days of the entry of this order to set a date for the fairness hearing.  It is further

**ORDERED** that the Joint Request for Scheduling of Case Management Conference [Docket No. 48] is **denied as moot**.  It is further

**ORDERED** that the Unopposed and Joint Motion for Status [Docket No. 53] is **denied as moot**.

DATED May 9, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge