# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00097-PAB-NYW
(Consolidated with Civil Action No. 22-cv-00347-NRN)

_____

Civil Action No. 22-cv-00097-PAB-NYW

YOLANDA BEASLEY,
KIMBERLY SHEARS-BARNES,
SHENEEQUA CARRINGTON, and
JOLYNN FROST, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

TTEC SERVICES CORPORATION,

    Defendant.
_____

Civil Action No. 22-cv-00347-PAB-NYW

DAVID ANDERSON, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

TTEC SERVICES CORPORATION,

    Defendant.
_____

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**
_____

Plaintiffs Yolanda Beasley, Kimberly Shears-Barnes, Sheneequa Carrington, Jolynn Frost and David Anderson ("Plaintiffs") submit this Motion and Memorandum in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement.

### I.    INTRODUCTION

On May 9, 2023, this Court preliminarily approved the Settlement between Plaintiffs and Defendant TTEC Services Corporation ("TTEC or "Defendant"), and ordered that notice be given to the class. ECF 54. The Settlement negotiated on behalf of the Class provides for (i) identity-theft protection services; (ii) a Basic Award of $100.00, subject to upward or downward proration; and (iii) a Reimbursement Award of up to $5,000. In addition, as explained in the Settlement Agreement at ¶ 2.4.4, California Settlement Subclass members are also eligible to receive a California Subclass Award payment of $100.00 in recognition of their California Confidentiality of Medical Information Act ("CMIA") claim, subject to proration up or down, regardless of whether they also receive a Basic Award, identity theft protection services and/or a Reimbursement Award.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and prolonged arm's-length negotiations. This Settlement represents an excellent result for the Settlement Class in this litigation and was obtained against a well-funded defense by Defendant, which was represented by a well-regarded law firm. Although Plaintiffs believe in the merits of their claims, this litigation was inherently risky and complex. The claims involve the intricacies of data breach litigation (a fast-developing area in the law), and the Plaintiffs would face risks at each stage of litigation. Against these risks, it was through the hard-fought negotiations and the skill and hard work of Settlement Class Counsel and the Class Representatives that the Settlement was achieved for the benefit of the Settlement Class. After this Court granted preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to Settlement Class Members via first class mail. Class Notice reached 92.6% of the Class, easily meeting the due process standard. *See* Declaration of Cameron R. Azari, Esq. On

Implementation and Adequacy of Notice Program, attached hereto as Exhibit 1, ¶ 17. The Notice was written in plain language, providing each Settlement Class Member with information regarding how to reach the Settlement Website, make a claim and how to opt-out or object to the Settlement. *Id*. at Exhibits 3-4. Out of 173,669 Settlement Class Members who received a Postcard Notice, only 15 sought to be excluded from the Settlement, and none have objected. *Id*. ¶ 23.

Plaintiffs now move the Court for final approval. The Settlement meets all the criteria for final approval. The Court should grant final approval, and also grant the Plaintiffs' request for attorneys' fees, expenses and service awards.

## II. INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 46) and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. Plaintiffs also incorporate by reference the Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 58), filed on July 10, 2023.

## III. SUMMARY OF SETTLEMENT

### A. <u>Settlement Benefits</u>

The proposed Settlement Class consists of:

> "All individuals within the United States (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC data security incident that occurred in approximately March to September of 2021."

S.A. ¶ 1.38.

The Settlement Class includes approximately 197,000 individuals. S.A. ¶ 1.40. The settlement also provides for a California Subclass defined as:

> All natural persons residing in the State of California at the time of the Data Security Incident (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC Data Security Incident that occurred in approximately March to September of 2021.

S.A. ¶ 1.6.

### 1.     *Cash Benefits*

Each Settlement Class Member who files a valid claim will be eligible for one cash payment. If more than one valid claim is submitted, the largest valid claim filed will be processed and the remaining claims will be denied as duplicative. SA ¶ 2.3

Settlement Class Members may make a Settlement Claim for: (i) a Basic Award of $100.00, or (ii) a Reimbursement Award of up to $5000 for documented out-of-pocket expenses incurred in connection with the Data Breach. SA ¶ 2.4. In addition, California Settlement Subclass Members are also eligible to receive a California Subclass Award payment of $100.00 in recognition of their California Confidentiality of Medical Information Act ("CMIA") claim, regardless of whether they also receive a Basic Award, identity theft protection services and/or a Reimbursement Award. SA ¶ 2.4.4. These claims are subject to upward or downward proration depending upon the claims filed and approved and the amounts available from the non-reversionary common fund. SA ¶ 2.7.

### 2.     *Credit Monitoring and Identity Theft Protection Services*

In addition, every Settlement Class Member who submits a valid claim is eligible to receive 36 months of free identity-theft protection services, called "Financial Shield" by Aura, a.k.a. Pango. SA ¶ 2.4.1. Settlement Class Members can elect to enroll in these services on the Claim Form. For members of the Settlement Class who opted to receive the one year of credit monitoring initially offered by TTEC, "Financial Shield" shall be in addition to that time. *Id*.

### 3. *Security-Related Improvements*

As part of the settlement and pre-mediation discovery, TTEC disclosed that it has spent approximately $30 million dollars on data security enhancements to date. The settlement contemplates that Defendant will prepare and provide to Plaintiffs' Counsel a confidential declaration outlining these security enhancements, thus assuring that Settlement Class Members' confidential data will be protected in the future.

### B. <u>Fees, Costs and Service Awards</u>

The Settlement Agreement also calls for a reasonable service award to each Representative Plaintiff in the amount of $2,500, to be paid solely from the Settlement Fund and subject to Court approval. SA ¶ 9.2. Under the terms of the agreement Settlement Class Counsel could also seek reasonable attorneys' fees in an amount not to exceed 30 percent (or $750,000.00) of the Settlement Fund, and their out-of-pocket expenses in an amount not to exceed $20,000 . SA ¶ 9.1. Pursuant to the terms of the Agreement, Settlement Class Counsel filed their Motion for Attorney Fees Costs, Expenses and Service Awards to Class Representatives on July 10, 2023 (ECF 58).

## IV. LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rules of Civil Procedure Rule 23(e), under which a class action may not be settled without approval of the Court. In determining whether to finally approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). This Court has considered and granted preliminary approval of class certification. ECF 45. For the same reasons described in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF 41), this Court should certify the class for purposes of final approval of the settlement.

Next, the Court must determine whether the settlement is fair, reasonable and adequate. *See Reiskin v. Reg'l Transportation Dist. Colorado*, No. 14-CV-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (settlement may be finally approved when it is fair, reasonable and adequate). "The settlement of a class action may be approved where the Court finds that the settlement is fair, reasonable, and adequate." *Tuten v. United Airlines, Inc.*, 41 F. Supp.3d 1003, 1007 (D. Colo. May 19, 2014). Approval of a proposed settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002).

Under Rule 23(e)(2), in order to give a settlement final approval, the court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C)(i)-(iv).

In the 10th Circuit, approval of a class action must also satisfy the factors set out by the court in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Specifically, the factors that must be addressed under *Jones* to evaluate whether a class action settlement is fair and reasonable under F.R.C.P. Rule 23 includes: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate

outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and, (4) the judgment of the parties and their counsel that the settlement is fair and reasonable." *Id.*

## V. ARGUMENT

Here, the Settlement Agreement is fair, reasonable and adequate under both the Rule 23 criteria and the Tenth Circuit *Jones* factors and should be finally approved.

### A. Whether the Settlement was Fairly and Honestly Negotiated

The negotiations in this matter occurred at arm's length. See ECF 46-1 (Klinger Dec. at ¶ 32). Settlements negotiated by experienced counsel that result from arm's-length negotiations are presumed to be fair, adequate and reasonable. *Lucas*, 234 F.R.D. at 693. This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

### B. The Strength of the Plaintiffs' Case

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that TTEC's data security was inadequate and that, if they establish that central fact, Defendant is likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Complaint. While Plaintiffs believe they have strong claims and would be able to prevail, their success is not guaranteed. In contrast, the value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain—especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL

6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.").

### C. The Risk, Expense, Complexity and Likely Duration of Further Litigation

While Plaintiffs believe their case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately roughly 190,000 individuals (each of whom may need to establish cognizable harm and causation); a complicated and technical factual background; and a sympathetic and motivated Defendant that already has provided some relief to its potentially affected customers (in the form of complimentary credit monitoring). Defendant has already asserted and will assert a number of potentially case-dispositive defenses, further increasing Plaintiffs' risk of further litigation.

Although nearly all class actions involve a high level of risk, expense and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g.*, *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation was announced in June 2022, after five full years of litigation.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages

methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

### D.     The Risk of Maintaining Class Action Status Throughout the Trial

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data incident cases is not common—first occurring in *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017). In one of the four significant data incident class actions mentioned above that have been certified on a national basis, this risk is very real. This over-arching risk simply puts a point on what is true in all class actions—class certification through trial is never a settled issue and is always a risk for the Plaintiffs.

### E.     The Amount Offered in Settlement

In light of the risks and uncertainties presented by data incident litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members. Each Class Member is eligible to make a claim for up to $5,000 in reimbursements for expenses and lost time related to the Data Incident or a $100 basic award, regardless of whether they experienced any identifiable loses. California Subclass Members are further eligible for a $100 CMIA payment. In total, Class Counsel obtained up to $2.5 million benefits.

Moreover, every Settlement Class Member who submits a valid claim is eligible to receive 36 months of free identity-theft protection services, called "Financial Shield" by Aura, a.k.a.

Pango. S.A. ¶ 2.4.1. This provides substantial additional benefit to Settlement Class Members. Because the settlement amount here is similar to (and exceeds) other settlements reached and approved in similar cases, this factor reflects that the Settlement is fair. *See* Declaration of Gary M. Klinger, Exhibit 2, ¶ 3; *see also Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

### F.     The Amount of Discovery Completed

Before entering into settlement discussions on behalf of class members, counsel should have sufficient information to make an informed decision. Plaintiffs vigorously and aggressively gathered all of the information that was available regarding Defendant and the Data Incident—including publicly-available documents concerning announcements of the Data Incident and notice of the Data Incident to Defendant current and former employees. ECF 47-1 ¶ 41. The parties also informally exchanged significant non-public information concerning the Data Incident and the size of the Class in preparation for a successful mediation. *Id*. Defendant shared considerable information about the post-incident investigation into the facts and circumstances of the Data Incident, including a summary of the investigation report's findings. *Id.*

Although the parties did not engage in formal discovery, Class Counsel's collective experience in similar types of privacy and data protection practices provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiffs' and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. ECF 47-1 ¶ 42. "[T]he efficiency with which the Parties were able to

reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Plaintiffs are well informed about the strengths and weaknesses of this case.

### G.     The Experience and Views of Counsel

The judgment of experienced Plaintiffs' counsel also supports a finding that the settlement is fair and reasonable. In negotiating the amounts to be paid under the Settlement, Plaintiffs' Counsel relied upon published reports documenting data breach and identity theft costs, actual costs incurred by Class Members (as relayed in conversations with Plaintiffs' Counsel), their own experience in other data incident litigation and reported settlements in other data incident class actions. The monetary benefits offered to Settlement Class Members are fair and reasonable in light of reported average out-of-pocket expenses incurred due to a data security incident.

The benefits available here compare favorably to what Class Members could recover if successful at trial and provide meaningful benefits to the Class in light of the uncertainties presented by continued litigation and trial. In the experience of Plaintiff's counsel who have litigated numerous data breach cases, have spoken to victims of other data breaches and have reviewed claims data from other settlements, the relief provided by this Settlement should be considered an outstanding result and benefit to the Class. Additionally, the monetary benefits provided by the Settlement compare favorably with those of other settlements in data incident class actions that have been approved by other courts. *See* Exhibit 2, ¶ 3.

Having worked on behalf of the putative class since the Data Incident was first announced, evaluated the legal and factual disputes and dedicated significant time and monetary resources to this litigation, Class Counsel fully endorses the Settlement.

### H.     Reaction of the Class Members

The reaction of the Settlement Class to this Settlement is overwhelmingly positive. Out of a total of 187,447 to whom notice was mailed, only 15 Class Members requested exclusion and there were no objections. *See* Exhibit 1, ¶ 23. As of July 25, 2023, the administrator received 6,794 Claim Forms (6,735 online and 59 paper). *Id.* at ¶ 25.

## I. The Settlement Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Due Process as well as Rule 23

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic mail or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Here, the direct mail Postcard Notice is the gold standard, and is consistent with Notice programs approved by other courts. *See Stott v. Capital Financial Services*, 277 F.R.D. 316, 342, (N.D. Tex. 2011) (approving notice sent to all class members by first class mail); *Billittri v. Securities America, Inc.*, Nos. 3:09-cv-01568-F, 3:10-cv-01833-F, 2011 WL 3586217, *9 (N.D. Tex. Aug. 4, 2011) (same). The content of the Notice provided adequately informed Settlement

Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves and/or enter an appearance through and attorney, and the binding effect of final approval and class judgment. The Notice utilized clear and concise language that is easy to understand and organized the Notice in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 764 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851, 208 L. Ed. 2d 425 (2020) ("All that the notice must do is 'fairly apprise ... prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests.")(internal citations omitted).

As outlined in detail in the supporting declaration of the Settlement Administrator, the Notice Plan here, and its execution, satisfied all the requirements of Rule 23(c). On June 8, 2023, Epiq caused the "Short Notice" in the form of a postcard to be sent by U.S. first class mail to 187,447 Settlement Class Members. Exhibit 1, ¶ 13. The Short Notice provided an overview of the settlement terms, the benefits available, the options available to Class Members and the settlement website and toll-free number where additional settlement information could be obtained. *Id.* After all address tracings and remailings, Epiq delivered 173,669 Short Notices, equating to a delivery success percentage (or "reach rate") of 92.6%. *Id.* at ¶ 17. Epiq (through its representative Cameron R. Azari, an experienced professional in the field of providing class action notice) offers the opinion that the delivery success percentage of 92.6% meets and exceeds the 70% threshold considered reasonable. *Id.* at ¶ 9. Such notice complies with the program approved by this Court in its Preliminary Approval Order and is consistent with Notice Programs approved in Colorado, the Tenth Circuit and across the United States. A reach rate of 92.6% considered a

"high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010).

In addition to the direct mail notice, Epiq established a dedicated website for the Settlement with an easy to remember domain name (www.TTECSettlement.com). *Id*. ¶ 18. Relevant documents were posted on the website for Settlement Class Members to review. To date, there have been 11,207 unique visitor sessions to the Settlement Website and 62,785 web pages have been presented. *Id*. On May 18, 2023, Epiq established a toll-free telephone number (1-800-391-1531) to allow Class Members to call for additional information, listen to answers to FAQs and to request that a Claim Package be mailed to them. *Id*. ¶ 19. This automated phone system is available 24 hours per day, 7 days per week. *Id*. As of July 25, 2023, there have been 3,256 calls to the toll-free telephone number representing 8,828 minutes of use. *Id*.

## VI. CONCLUSION

Plaintiffs have negotiated a fair, adequate and reasonable Settlement that guarantees Settlement Class Members the opportunity to claim significant cash relief and valuable credit monitoring to all those who previously signed up as well as to those who made claims. The Settlement Agreement was reached only after extensive arm's-length negotiations and an assessment of the *Jones* factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF 47) and Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards (ECF 58), Plaintiffs respectfully request this Court enter the proposed Final Approval Order filed with the Motion for Final Approval, finally certify the Settlement Class and appoint Settlement Class Counsel and Plaintiffs as representatives for the Class, award Named Plaintiffs a

service award in the amount of $2,500 each, grant Settlement Class Counsel attorneys' fees of $750,000 and expenses of $14,080.53 and grant final approval of this Settlement.

Dated: July 28, 2023    Respectfully submitted,

 */s/Gary M. Klinger*
_____

Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Phone: 866.252.0878
gklinger@milberg.com

Jean S. Martin
**MORGAN & MORGAN**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 559-4908
jeanmartin@ForThePeople.com

Scott Edward Cole.
**COLE & VAN NOTE**
555 12th Street, Suite 1725
Oakland, California 94607
Telephone: (510) 891-9800
Facsimile: (510) 891-7030
sec@colevannote.com

*Attorneys for Plaintiffs and the Settlement Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July, 2023, I caused the foregoing document to be filed with the Clerk of this Court via the Court's CM/ECF system, which will cause a true and correct copy to be served electronically on all counsel of record.

                                         */s/Gary M. Klinger*
                                         Gary M. Klinger