IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00097-PAB-STV
(Consolidated with Civil Action No. 22-cv-00347-PAB-STV)

---

Civil Action No. 22-cv-00097-PAB-STV

YOLANDA BEASLEY,
KIMBERLY SHEARS-BARNES,
SHENEEQUA CARRINGTON, and
JOLYNN FROST, individually and on behalf of all others similarly situated,

　　Plaintiffs,

v.

TTEC SERVICES CORPORATION,

　　Defendant.

---

Civil Action No. 22-cv-00347-PAB-STV

DAVID ANDERSON, individually and on behalf of all others similarly situated,

　　Plaintiff,

v.

TTEC SERVICES CORPORATION,

　　Defendant.
_____

**ORDER**
_____

This matter is before the Court on Plaintiffs' Motion for Final Approval of Class Action Settlement and Memorandum in Support [Docket No. 59] and Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives [Docket No. 58]. Plaintiffs Yolanda Beasley, Kimberly Shears-Barnes, Sheneequa

Carrington, Jolynn Frost, and David Anderson, along with David Barocas and Brent Lett (collectively the "representative plaintiffs"),[1] filed the motions. Docket No. 58 at 2; Docket No. 59 at 1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

## I.   BACKGROUND

Defendant TTEC Services Corporation ("TTEC") is a global provider of customer experience technology and services. Docket No. 20 at 2, ¶ 2. TTEC stores confidential information about its employees and clients on a network system. *Id*. at 3, ¶ 3. This action arises from a data security breach of TTEC's system that occurred from March 31, 2021 to September 12, 2021. *Id*. at 4, ¶ 7. An unauthorized, unknown party obtained TTEC files that contained the personally identifiable information ("PII"), including names and Social Security numbers, of approximately 197,835 individuals. *Id*. at 4-5, ¶¶ 7-9, 16; Docket No. 46 at 2. Plaintiffs allege that TTEC failed to follow basic security procedures and adequately protect the PII of class members. Docket No. 20 at 5-6, ¶¶ 13, 20. Plaintiffs allege that the data security breach constitutes a present and continuing risk of fraud and identity theft. *Id*. at 29, 31, 33-34, ¶¶ 112, 122, 134, 146. Plaintiffs assert common law claims for negligence, breach of contract, invasion of privacy, and breach of confidence, as well as violations of several state privacy statutes. *Id*. at 42-68.

---

[1] Mr. Barocas is a named plaintiff in a companion action pending in the United States District Court for the District of Arizona, *Barocas v. TTEC Services Corp.*, No. 22-cv-00217-JFM. Docket No. 46 at 1-2 n.1. Mr. Lett is the named plaintiff in a companion action pending in the United States District Court for the Northern District of California, *Lett v. TTEC Services Corp., et al.*, No. 22-cv-00018-SK. *Id*. Mr. Lett and Mr. Barocas are therefore named as representative plaintiffs in the settlement. *Id*.

On September 15, 2022, the representative plaintiffs filed an unopposed motion for preliminary approval of a class action settlement. Docket No. 46. On May 9, 2023, the Court granted plaintiffs' motion for preliminary approval. Docket No. 54. In July 2023, the representative plaintiffs filed a motion for final approval of the class action settlement and a motion for attorneys' fees. Docket Nos. 58-59. On August 18, 2023, the Court held a fairness hearing. Docket No. 61.

## II.     FINAL APPROVAL OF CLASS ACTION CERTIFICATION

Approval of a class action settlement under Fed. R. Civ. P. 23 takes place in two stages. In the first stage, the Court preliminarily certifies a settlement class, preliminarily approves the settlement agreement, and authorizes that notice be given to the class so that interested class members may object to the fairness of the settlement. In the second stage, after notice is given to the putative class, the Court holds a fairness hearing at which it addresses (1) any timely objections to the treatment of this litigation as a class action, and (2) any objections to the fairness, reasonableness, or adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009).

District courts have broad discretion in granting or denying class certification. *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 543 F.3d 597, 603 (10th Cir. 2008). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). A district court may only certify a settlement class if it is "satisfied, after a rigorous analysis," that the requirements of Rule 23 are met, and

frequently a district court's "'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id.*

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed. R. Civ. P. 23(a) as well as the requirements of one of the three types of classes identified in Rule 23(b). Where the plaintiff applies for class certification, plaintiff bears the burden of proving that Rule 23's requirements are satisfied. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. Bd. of Cnty. Comm'rs of the Cnty. of El Paso*, 386 F.3d 963, 968 (10th Cir. 2004)).

### A. Rule 23(a)

Rule 23(a) requires that (1) the class be so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In the order on the motion for preliminary approval, Docket No. 54 at 9-13, the Court found that each of the requirements was met and incorporates those findings herein. Accordingly, the requirements of Rule 23(a) are met.

### B. Rule 23(b)(3)

The Court preliminarily certified the class under Rule 23(b)(3), *id.* at 14-16, which states that a class action may be maintained if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court finds that final

4

certification is appropriate for the same reasons it found preliminary approval was warranted.  *See* Docket No. 54 at 14-16.

### III.     FINAL APPROVAL OF CLASS ACTION SETTLEMENT

#### A.  Overview of the Settlement Agreement

The proposed settlement class consists of "[a]ll individuals within the United States (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC data security incident that occurred in approximately March to September of 2021." Docket No. 59 at 3; *see also* Docket No. 46-2 at 14, ¶ 1.38.[2]  The settlement also provides for a California subclass consisting of "[a]ll natural persons residing in the State of California at the time of the Data Security Incident (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC Data Security Incident that occurred in approximately March to September of 2021." Docket No. 59 at 3-4; *see also* Docket No. 46-2 at 6-7, ¶ 1.6.[3]

The settlement agreement provides for a $2,500,000 non-reversionary settlement fund.  Docket No. 46 at 5.  Each class member who files a valid claim will be eligible for one cash payment for (i) a basic award of $100 or (ii) a reimbursement award of up to $5,000 for documented out-of-pocket expenses incurred in connection with the data

---

[2] "Excluded from the Settlement Class is any judge presiding over the Litigation and members of their first-degree relatives, judicial staff, and persons who timely and validly request exclusion from the Settlement Class."  Docket No. 46-2 at 14, ¶ 1.38.

[3] "Excluded from the California Settlement Subclass is any judge presiding over the Litigation and any members of their first-degree relatives, judicial staff, the officers and directors of TTEC, and persons who timely and validly request exclusion from the California Settlement Subclass."  Docket No. 46-2 at 6-7, ¶ 1.6.

5

security breach.  Docket No. 59 at 4.  Every class member is also eligible to receive 36 months of free identity-theft protection services, called "Financial Shield."  *Id.*  In addition, California settlement subclass members are eligible to receive a California subclass award payment of $100 in recognition of their California Confidentiality of Medical Information Act ("CMIA") claim, regardless of whether they also receive a basic award or reimbursement award.  *Id.*  The monetary awards are subject to upward or downward proration depending on the number of approved claims.  *Id.*

The settlement agreement allows each representative plaintiff to claim a "service award" of $2,500, subject to Court approval.  *Id.* at 5.  The settlement agreement also permits class counsel to seek reasonable attorneys' fees in an amount not to exceed 30 percent ($750,000) of the settlement fund and reasonable costs and expenses not to exceed $20,000.  *Id.*

### B. Notice to Settlement Class

Under Rule 23(e)(1), a district court approving a class action settlement "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement.  *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound

by the adjudication of a representative action.  *Id.*  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable [is given] under the circumstances including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted).  Thus, the legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are "coextensive and substantially similar."  *DeJulius*, 429 F.3d at 944.

The parties agreed to provide direct and individualized notice, in the form of postcards, to class members via United States Postal Service ("USPS") first class mail.  Docket No. 54 at 20.  The Court previously approved the parties' notice plan, notice forms, and claim form.  *See id.* at 20-21.  The claims administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), identified 187,447 settlement class members from TTEC's records.  Docket No. 59-1 at 4, ¶ 12.  After verifying all mailing addresses, Epiq mailed the notice postcards to the 187,447 settlement class members via USPS first class mail on June 8, 2023.  *Id.*, ¶¶ 13-14.  Epiq re-mailed 21,689 postcards that were returned as undeliverable to any new address available through USPS information or a third-party service's information.  *Id.* at 5, ¶ 15.  After all re-mailings, Epiq delivered the notice postcards to 173,669 of the 187,447 class members, equating to a delivery success rate of 92.6 percent.  *Id.*, ¶ 17.  Epiq established a website for the settlement, containing the notice forms, the settlement agreement, the Court's preliminary approval order, the motion for attorneys' fees, an online claim form, and information about relevant deadlines and case information.  *Id.* at 5-6, ¶ 18.  Epiq also established a toll-free telephone number to allow class members to call for additional information and

7

request a claim form.  *Id.* at 6, ¶ 19.  The Court finds that this notice procedure satisfies Rule 23(c)(2)(B) and (e)(1).

### C. <u>Analysis of Rule 23(e) Factors</u>

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In making this determination, "trial judges bear the important responsibility of protecting absent class members" and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  If the settling parties can establish these factors, courts usually presume that the proposed settlement is fair and reasonable.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement

where: (1) it is the result of arm's length negotiations; (2) it is based on sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected).

In addition, Rule 23(e)(2) states that a court is to consider the following factors when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "The goal of this amendment is . . . to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment.

The Court determines that the settlement agreement is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and *Rutter*. The Court finds that the negotiations were done fairly and honestly. The settlement agreement was the product of arms-length negotiations between the parties. *See* Docket No. 59 at 7; Docket No. 46-1 at 15, ¶ 41. The parties participated in an all-day mediation session before mediator Bennett Picker on July 27, 2022. Docket No. 46-1 at 15, ¶ 39. Although the mediation session did not result in an immediate settlement, the parties continued to engage in negotiations, which ultimately resulted in the settlement

agreement. *Id.*, ¶¶ 39-40. There is no evidence that the settlement agreement was the result of a collusive agreement between the parties.

Furthermore, the Court finds that serious questions of law and fact exist placing the ultimate outcome of the litigation in doubt. The representative plaintiffs concede that defendants could assert several "case-dispositive defenses" and that plaintiffs' damages methodology has not been tested in front of a jury. Docket No. 59 at 8-9. TTEC also denies any wrongdoing or liability. Docket No. 46 at 3. Other courts have recognized that data breach class action cases are "particularly risky, expensive, and complex." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) (collecting cases); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (collecting cases).

Additionally, the Court finds that the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation. Class members are eligible to receive a basic award of $100 or a reimbursement award of up to $5,000 for documented out-of-pocket expenses, in addition to receiving 36 months of free identity-theft protection services. Docket No. 59 at 9-10. If every class member files a claim, the $2,500,000 settlement fund would provide for a recovery of approximately $12.63 per class member. Docket No. 46 at 21; *see also* Docket No. 59-2 at 2, ¶ 3. Class counsel represents that this settlement amount exceeds the monetary benefits in many other data breach settlements. Docket No. 59-2 at 2, ¶ 3. "The relatively early Settlement in this case benefits the Settlement Class immensely because they can immediately take advantage of Settlement benefits designed to mitigate and prevent

future harm including identity monitoring" services. *Home Depot*, 2016 WL 6902351, at *5. "Courts presiding over similar cases have recognized that the 'legal issues involved in data breach litigation are cutting-edge and unsettled, so that many resources would necessarily be spent litigating substantive law as well as other issues.'" *Id.* (citation and alterations omitted). Moreover, it is unclear whether future recovery at trial could achieve more than the relief made available in the settlement agreement. Given the uncertainty of class members' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex data breach litigation.

Furthermore, the parties believe that the settlement is fair and reasonable. Class counsel have extensive experience in data breach litigation and state that the monetary benefits in this settlement "are fair and reasonable in light of reported average out-of-pocket expenses incurred due to a data security incident." Docket No. 59 at 11. Before entering into settlement negotiations, the parties shared non-public information concerning the data breach. *Id.* at 10. In negotiating the settlement, class counsel relied upon published reports documenting data breach costs, actual costs incurred by class members, counsels' prior experience in data breach litigation, and reported settlements in other data breach class actions. *Id.* at 11. The monetary benefits per class member provided by the settlement agreement exceed the benefits in many other data breach cases. *See* Docket No. 59-2 at 2, ¶ 3. At the fairness hearing, TTEC agreed that the settlement is fair and reasonable.

Additionally, no class members objected to the settlement agreement. Docket No. 59 at 12; *see also* Docket No. 61 (courtroom minutes noting that there were no

11

objectors present at the fairness hearing). Only fifteen class members requested exclusion from the settlement. Docket No. 59 at 12; Docket No. 59-1 at 6-7, ¶ 23. As of July 25, 2023, Epiq received 6,794 claim forms. Docket No. 59 at 12; Docket No. 59-1 at 7, ¶ 25. Class counsel states that the 3.9 percent claims rate in this case is commensurate with and exceeds the claims rate in many data breach cases. Docket No. 59-2 at 3, 5-6. The reaction of class members indicates that the relief is adequate and that class members support the settlement. Finally, the Court finds that the settlement treats class members equitably and the representative plaintiffs and class counsel have adequately represented the class.

As a result, the Court finds that the settlement agreement is fair, reasonable, and adequate under the factors set forth in Rule 23(e)(2) and *Rutter*.

## IV.  ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

The representative plaintiffs filed a motion for attorneys' fees, costs, and service awards. Docket No. 58. Class counsel requests $750,000 in attorneys' fees, which is 30 percent of the settlement fund, as well as $14,080.53 in expenses. *Id.* at 2. The representative plaintiffs request a service award of $2,500 for each representative plaintiff. *Id.* No class members objected to the request for attorneys' fees, expenses, or service awards.

In a certified class action, the court may award reasonable attorneys' fees and costs that are authorized by the parties' agreement provided that (1) the claim for an award is made by a motion under Rule 54(d)(2) and notice of the motion is directed to class members; (2) a class member or party from whom payment is sought may object; and (3) the Court finds facts and states its legal conclusions. Fed. R. Civ. P. 23(h). The

12

notice provided to class members stated that class counsel would request an attorneys' fee award not to exceed $750,000, costs not to exceed $20,000, and service awards of $2,500 to each of the representative plaintiffs. Docket No. 58 at 3; Docket No. 59-1 at 33.

### A. Attorneys' Fees

In common fund cases, the Tenth Circuit has "recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis." *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because the fee request is for a percentage of the common fund, the Court will consider the attorneys' fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases); *see also Paulson v. McKowen*, No. 19-cv-02639-PAB-NYW, 2023 WL 2528783, at *7 (D. Colo. Mar. 15, 2023).

The "percentage reflected in a common fund award must be reasonable" and the court "must articulate specific reasons for fee awards." *Brown*, 838 F.2d at 454 (citation and internal quotations omitted). In determining the reasonableness of a percentage award, courts apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee - this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

>  attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 454-55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)); *see also Gottlieb*, 43 F.3d at 483.  "[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation." *Brown*, 838 F.2d at 455-56 ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately.").  Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998).

Class counsel have significant experience in class action cases and data breach litigation, as reflected in their histories provided to the Court.  See Docket No. 58 at 12; Docket No. 46-1 at 3-11, ¶¶ 3-21 (describing Gary M. Klinger's experience with class actions and data breach cases); Docket No. 46-3 at 4, ¶¶ 8-10 (describing Jean S. Martin's experience with class actions and data breach cases); Docket No. 46-4 at 3-6, ¶¶ 3-7 (describing Scott Edward Cole's experience with class actions and data breach cases).  Class counsel additionally took this case on a contingency basis, *see* Docket No. 58 at 11, adding to the risk class counsel incurred by bringing the case. *See In re Crocs, Inc. Secs. Litig.*, No. 07-cv-02351-PAB-KLM, 2014 WL 4670886, at *4 (D. Colo. Sept. 18, 2015) ("A contingent fee arrangement often weighs in favor of a greater fee because such a large investment of money and time places incredible burdens upon law practices." (internal alterations, quotations, and citation omitted)).  A fee of one-third of the common fund is typical in complex cases.  *See id.* at *3 (collecting cases).  Class counsel's fee request is 30 percent of the common fund.  Docket No. 58 at 2.  Furthermore, the monetary benefits per class member provided by the settlement

agreement exceed the benefits in many other data breach cases. See Docket No. 59-2 at 2, ¶ 3. The Court finds that, under the Johnson factors, an award of $750,000 in attorneys' fees to class counsel is reasonable.[4] Accordingly, the Court awards class counsel $750,000 in attorneys' fees.

### B. Costs

Class counsel requests $14,080.53 in costs. Docket No. 58 at 14. Class counsel states that the expenses include filing fees, legal research, postage, and mediation expenses. Id.; Docket No. 58-1 at 7-9, ¶¶ 22, 27-28. The Court finds that these costs are reasonable and therefore awards class counsel $14,080.53 in costs.

### C. Incentive Award

"Courts have recognized that an award may be appropriate to provide an incentive to act as a named plaintiff." Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P., 888 F.3d 455, 467 (10th Cir. 2017). Additionally, "courts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case." Id. at 468 (collecting cases). The representative plaintiffs each request a service award of $2,500. Docket No. 58 at 15. Class counsel states that the representative plaintiffs were "actively engaged in this action, which included, assisting in the investigation of the case, producing relevant documents, reviewing and approving pleadings, reviewing the Settlement documents,

---

[4] Furthermore, class counsel represents that, under the lodestar method, they would have incurred $643,123.50 in attorneys' fees as of July 10, 2023. Docket No. 58 at 13-14; see also Docket No. 58-1 at 7-8, ¶ 22. Class counsel expects to spend another 40 to 50 hours executing the settlement, including preparing the motion for final approval, participating in the fairness hearing, and working with Epiq to distribute benefits to class members. Docket No. 58 at 14. The Court finds that the loadstar cross-check weighs in favor of the reasonableness of the award.

and answering counsel's many questions." *Id.* (citing Docket No. 58-1 at 9-10, ¶ 30). The Court finds that service awards of $2,500 are fair and reasonable based on the representative plaintiffs' involvement in this case. As a result, the Court awards each representative plaintiff a service award of $2,500.

## V.     CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Final Approval of Class Action Settlement and Memorandum in Support [Docket No. 59] is **GRANTED**. It is further

**ORDERED** that Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives [Docket No. 58] is **GRANTED**. It is further

**ORDERED** that, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of settlement only, the class is certified as follows:

> All individuals within the United States (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC data security incident that occurred in approximately March to September of 2021. Excluded from the Settlement Class is any judge presiding over the Litigation and members of their first-degree relatives, judicial staff, and persons who timely and validly request exclusion from the Settlement Class.

It is further

**ORDERED** that, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, and for the purposes of settlement only, the California subclass is certified as follows:

> All natural persons residing in the State of California at the time of the Data Security Incident (1) whose protected health information or personal identifying information was stored, possessed or controlled by TTEC; and (2) who were affected by the TTEC Data Security Incident that occurred in approximately March to September of 2021. Excluded from the California Settlement Subclass is any judge presiding over the Litigation and any members of their first-degree

>relatives, judicial staff, the officers and directors of TTEC, and persons who timely and validly request exclusion from the California Settlement Subclass.

It is further

**ORDERED** that the Court finds, solely for the purposes of this settlement, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of the settlement class are so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims of the named plaintiffs are typical of the claims of the class; (d) the named plaintiffs and plaintiffs' counsel have fairly and adequately represented and protected the interests of all of the class members; and (e) questions of law or fact predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. It is further

**ORDERED** that the Court finds that the notice given to members of the class was the best notice practicable under the circumstances, was reasonably calculated under the circumstances to apprise such members of the pendency of this action and to afford them an opportunity to object to, and meets the requirements of Rule 23 (c)(2)(B) and (e)(1). Because the Court has afforded a full opportunity to all class members to be heard, the Court further determines that all members of the class are bound by the settlement agreement. It is further

**ORDERED** that, pursuant to Rule 23(e)(2) of the Federal Rules of Civil Procedure, this Court finds that the settlement agreement is fair, reasonable, and adequate. Accordingly, the Court gives final approval to the settlement agreement in all

17

respects and authorizes and directs the parties to consummate the settlement agreement in accordance with its terms and provisions. It is further

**ORDERED** that plaintiffs shall file the settlement agreement as a separate docket entry within **ten days** of the entry of this Order. It is further

**ORDERED** that the parties and their counsel shall fulfill their obligations and duties under the settlement agreement. It is further

**ORDERED** that the representative plaintiffs and all class members are permanently enjoined and barred from asserting, initiating, prosecuting, or continuing any of the claims released by the settlement agreement. It is further

**ORDERED** that class counsel is awarded $750,000 from the settlement fund, which represents thirty percent of the net settlement fund. It is further

**ORDERED** that the representative plaintiffs Yolanda Beasley, Kimberly Shears-Barnes, Sheneequa Carrington, Jolynn Frost, David Anderson, David Barocas, and Brent Lett are each awarded a service award of $2,500 from the settlement fund. It is further

**ORDERED** that class counsel shall be reimbursed $14,080.53 in costs from the settlement fund. It is further

**ORDERED** that neither this Order nor the settlement agreement is an admission or concession by defendant TTEC respecting any facts, liabilities, or wrongdoing. It is further

**ORDERED** that, without affecting the finality of this Order, this Court retains jurisdiction to consider all further matters arising out of or connected with the settlement agreement, including its implementation. It is further

**ORDERED** that the Unopposed and Joint Motion for Status [Docket No. 62] is **DENIED as moot**.  It is further

**ORDERED** that judgment shall be entered dismissing this case with prejudice.

DATED February 21, 2024.

                                BY THE COURT:

                                _s/ Philip A. Brimmer_____
                                PHILIP A. BRIMMER
                                Chief United States District Judge